PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM S. BERMAN, M.D.,
<u>Plaintiff-Appellant,</u>

v.

PHYSICAL MEDICINE ASSOCIATES,
LIMITED, A Virginia Corporation;

No. 99-1043

ABRAHAM A. CHERRICK, M.D.; MAYO
FRIEDLIS, M.D.; VIRGIL BALINT,
M.D.; JAMES JOHNSEN, M.D.;
RODNEY DADE, M.D.,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-98-346-A)

Argued: April 4, 2000

Decided: August 23, 2000

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Michael and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Emil Hirsch, FREEDMAN, LEVY, KROLL &
SIMONDS, Washington, D.C., for Appellant. Frank Douglas Ross,

III, ODIN, FELDMAN & PITTLEMAN, P.C., Fairfax, Virginia, for Appellees. **ON BRIEF:** Patrick J. Kearney, FREEDMAN, LEVY, KROLL & SIMONDS, Washington, D.C., for Appellant.

_____

**OPINION**

NIEMEYER, Circuit Judge:

After Dr. William S. Berman, who was a stockholder, director, and employee of a close corporation providing medical services, submitted his resignation as an employee, effective nine months later, the board of directors of the corporation terminated his employment, effective 30 days later, claiming that their preemptive decision was justified by "reasonable cause." Berman brought this diversity-jurisdiction action against the corporation's directors and stockholders, who were essentially the same people, as well as the corporation itself, alleging that they had breached his employment agreement and severance benefit agreement and that the directors and stockholders had breached fiduciary duties owed to him. At trial, the district court, applying Virginia law, granted the defendants' motion for judgment as a matter of law on Berman's fiduciary-duty claims and allowed the breach-of-contract claims to go to the jury. After the jury returned a verdict in favor of Berman on his contract claims, he appealed the district court's ruling dismissing his fiduciary-duty claims. For the reasons that follow, we affirm.

I

Physical Medicine Associates, Ltd. ("PMA") is a Virginia corporation, located in Fairfax County, which provides medical services. During the period relevant to this case -- 1997-98-- the corporation employed six doctors, including Dr. William S. Berman, who were both employees and its only stockholders. Five of the six doctors, including Berman, were also directors of the corporation. Each of the doctors had an employment agreement with the corporation and an agreement for the payment of severance benefits should the doctor leave the practice. Finally, the doctors had a stockholder agreement among themselves and with the corporation providing that when a

2

doctor left the practice, the corporation would buy his stock for $50,000.

PMA provided medical services to a nursing home in Arlington, Virginia, under a contract that provided the practice with about a third of its patients. In late December 1997, while Berman was working at the nursing home, he had two encounters with nursing-home personnel involving patient care. One of the incidents was witnessed by the nursing-home director. On January 5, 1998, the nursing-home director complained to PMA about the incidents, explaining that Berman had yelled at nurses, patients, and patients' families and was rude. The nursing-home director stated that she did not want Berman to return to the nursing home anymore and that if he did come back, PMA's doctors would be asked to stop seeing patients at the nursing home. The complaint from the nursing home was not the first that PMA had received about Berman's yelling at nurses.

On the same day PMA received the nursing-home complaint, one of PMA's directors told Berman about it and demanded that he apologize and make amends. As Berman related it, he was told that he would have "to crawl on [his] knees and make amends"; he would have "to fix it." He was admonished that if he did not fix the problem, he could be voted out of the practice. On learning of the complaint and PMA's insistence that he make amends, Berman canceled his patients' appointments for the next day, visited his attorney, and submitted a letter of resignation to PMA, dated January 6, 1998, effective nine months later. The letter read:

> Pursuant to Paragraph I of the Severance Benefit Agreement dated July 1, 1997, I hereby give you notice of my withdrawal as an employee of the Corporation effective October 6, 1998.

By delaying the effective date of his resignation nine months, Berman sought to become entitled to severance benefits, which were available only to a doctor who gave nine months' notice of his withdrawal from the practice.

After receiving Berman's letter, PMA included the subject of Berman's resignation on the agenda for the corporation's next board

3

meeting, scheduled for January 21, 1998. Before that meeting, one of the other doctors at PMA observed to another that Berman did not deserve his full severance benefit because his conduct at the nursing home was unprofessional and could cause PMA to lose its contract there. These two doctors discussed informally their view that if Berman were unable to repair his relationship with the nursing home, "then it [would be] reasonable and justifiable to vote to fire him." By the time of the January 21 board meeting, Berman's relationship with the nursing home had not been repaired, and on the evening before the meeting, the stockholders of PMA, except Berman, met and decided that at the directors' meeting the next day, Berman's employment would be terminated.

At the board meeting on January 21, with Berman present, the board discussed the incident at the nursing home and the complaint about Berman's conduct. Berman stated that he had done nothing wrong, comparing his behavior to that of another local physician who frequently yelled at nurses. He acknowledged that "his behavior might have been intemperate" but expressed his opinion that he had "not done anything unreasonable." One of the doctors then produced a letter written by the nursing-home director, indicating that the nursing home's relationship with PMA would be in jeopardy if Berman were to return to the nursing home. As it became apparent to Berman that his employment would be terminated, Berman objected to Dr. Rodney Dade's presence because he was only a stockholder and not a board member, but Dade did not leave. The participants at the meeting, including Dade, then voted unanimously to dismiss Berman for cause, effective 30 days later.

The employment agreement between Berman and PMA provided that the corporation could discharge Berman "for reasonable cause," but it required that all other board members vote for the action. The agreement defined "reasonable cause" to "mean that the physician has conducted himself in an unprofessional, unethical, immoral or fraudulent manner . . . or the physician's conduct discredits the Corporation or is detrimental to the reputation or standing of the Corporation."

The severance benefit agreement between Berman and PMA provided him with the right to a severance benefit upon his withdrawal from the practice equal to 1.5 times his average annual earnings for

4

the best three of his previous five years as an employee of the corporation. Under the terms of the agreement, the benefit became vested on a gradually increasing basis over a period of nine years. To receive the benefit, however, Berman would have to give PMA nine months' written notice of his withdrawal.

The stockholder agreement among the stockholders of PMA and the corporation provided that a stockholder of PMA could not transfer his shares to anyone else and that if the stockholder's employment with PMA terminated, the corporation would purchase his stock for $50,000.

Shortly after being discharged by the corporation, Berman filed this action complaining that PMA, its directors, and its stockholders had breached Berman's employment agreement, severance benefit agreement, and stockholder agreement. Berman demanded over $100,000 in lost salary, over $370,000 in severance benefits, and $50,000 for his stock. Berman also alleged that the directors of PMA had breached their fiduciary duties of loyalty and due care, owed to him as a "director, shareholder and employee of PMA," by failing to conduct an adequate investigation into the cause for his termination and acting without a reliable factual basis in terminating his employment for cause; by conducting a secret meeting to orchestrate his termination; by failing to give him adequate advance notice of the charges against him and concealing the fact that they would seek his termination for cause; by allowing Dade, who was not a director, to vote on his termination; and by terminating Berman's employment for their own personal gain in order to avoid paying him benefits due under his various agreements with PMA. Berman alleged in a separate count that Dade had aided and abetted in breaching the directors' fiduciary duty by participating in the board meeting and voting to discharge him. For the breach-of-fiduciary-duty counts, Berman demanded $500,000 in compensatory damages and $1 million in punitive damages. Berman also sued two of the doctors for defamation but later withdrew those claims.

Following Berman's presentation of evidence to a jury, the district court granted PMA's motion for judgment as a matter of law on the fiduciary-duty claims. The court concluded that while the directors owed a fiduciary duty to the stockholders as a class, they owed no

5

such duty to Berman as an individual stockholder. The court also rejected Berman's argument that, because PMA had conducted itself as a partnership, the directors owed Berman the fiduciary duties owed by partners. At this stage of the trial, the parties informed the court that they had settled Berman's claim for breach of the stockholder agreement, and the court thus dismissed that claim as well. The claims for breach of the employment agreement and severance benefit agreement proceeded to verdict, and the jury awarded Berman $4,970.25.

Berman appeals only the district court's ruling granting judgment as a matter of law on the fiduciary-duty claims.

II

Berman contends that the district court erred in rejecting, as a matter of Virginia law, his fiduciary-duty claims when it concluded: (1) that the directors of PMA did not owe Berman a fiduciary duty as an individual stockholder, and (2) that PMA did not operate as a partnership and therefore its stockholders did not owe each other fiduciary duties as partners. We address these points in order.

A

Berman argues first that because he was a stockholder of PMA, the directors of PMA owed him a fiduciary duty. He devotes a substantial portion of his brief to his contention that in Virginia directors of a close corporation owe a fiduciary duty to stockholders as individuals and not only to the stockholders as a class. He argues that therefore he was owed a fiduciary duty and that the directors, in terminating his employment, breached this duty by failing to follow fair and established corporate procedures. By having brought this breach-of-fiduciary-duty claim, Berman sought to have the jury consider not only compensatory damages but also punitive damages.

The question whether the fiduciary duty of a director of a close corporation runs to stockholders individually, as well as to stockholders as a class, does not appear to have been decided in Virginia. Compare Byelick v. Vivadelli, 79 F. Supp. 2d 610, 624-25 (E.D. Va. 1999) (pre-

6

dicting that the Virginia Supreme Court would recognize a claim against an inside director by a minority shareholder in a close corporation), with American Gen. Ins. Co. v. Equitable Gen. Corp., 478 F. Supp. 721, 740-41 (E.D. Va. 1980) (holding that the fiduciary duty of directors under Virginia common law attaches only to dealings with the shareholders as a class). We need not resolve this question here because we reject Berman's claims on different grounds. Even if PMA's directors owed a fiduciary duty to Berman as an individual stockholder, that duty would apply only to their dealings with Berman in his role as a stockholder. But Berman's only claim directly implicating his status as a stockholder is that PMA failed to repurchase his stock, in violation of the stockholder agreement. Berman and PMA settled this claim, agreeing that if Berman tendered his shares to PMA, PMA would pay him $50,000 as provided in the stockholder agreement. After PMA terminated his employment and before reaching this settlement, Berman remained a stockholder and could have exercised all the rights available to him as a stockholder, none of which he alleged to have been denied.

Berman's other claim for breach of fiduciary duty-- that the directors did not follow fair procedures in deciding to terminate his employment -- implicates his status not as a stockholder, but as an employee. Specifically, Berman alleged that PMA's directors failed to conduct an adequate investigation into whether there was reasonable cause for the termination of his employment; they conducted a secret meeting to orchestrate his termination at the directors' meeting; they failed adequately to notify him that they would be seeking to terminate him for reasonable cause; and they allowed Dade, a nondirector, to vote on his termination. However, Berman has identified no injury caused by the process by which the directors reached their decision, as distinct from injuries caused by the decision itself. And any injury caused by the termination decision itself would be an injury to his interests as an employee, not as a stockholder. Any injury to his interests as an employee would arise from breach of contractual duties by the corporation, not from breach of any fiduciary duties by the directors. Berman's contractual claims for breach of the employment agreement and breach of the severance benefit agreement were submitted to the jury, which found for Berman and awarded him damages.

7

Moreover, as to Berman's claims under the employment agreement and severance benefit agreement, only the corporation owed Berman a contractual duty; the directors individually owed Berman no contractual duty. Nor did the directors owe Berman as an employee a fiduciary duty; directors cannot act as fiduciaries in their relationship with employees and at the same time discharge their fiduciary duties to the corporation of which they are directors. See Va. Code Ann. § 13.1-690 ("A director shall discharge his duties as a director . . . in accordance with his good faith business judgment of the best interests of the corporation"); Va. Code Ann. § 13.1-727.1 ("With respect to any action or any failure to act by the board of directors, the provisions of § 13.1-690 shall apply"); see also United States v. Byrum, 408 U.S. 125, 138 (1972) (applying Ohio law) (Directors "have a fiduciary duty to promote the interests of the corporation"); Byington v. Vega Biotechnologies, Inc., 869 F. Supp. 338, 345 (D. Md. 1994) (applying Delaware law) ("Any contrary rule [imposing on directors a fiduciary duty to employees] would place intolerable and irreconcilable conflicts of interest upon the directors").

B

Berman also argues that the stockholders of PMA owed him a fiduciary duty because the stockholders functioned as partners, and partners traditionally owe a fiduciary duty to each other. To impute partnership law to persons in a corporate structure, Berman relies on Boyd, Payne, Gates & Farthing, P.C. v. Payne, Gates, Farthing & Radd, P.C., 422 S.E.2d 784 (Va. 1992), which held that the members of a law partnership, which converted to a corporation for tax purposes but otherwise continued to function as a partnership, were subject to duties imposed by partnership law. But Boyd, Payne involved circumstances far different from those presented to the district court in this case. In Boyd, Payne, the original law partnership continued to function as a law partnership except to the extent that it needed to satisfy corporate-law requirements to obtain tax benefits. The partnership did not operate differently after adopting corporate status; its assets were not merged into the corporation; it continued to file partnership tax returns; and tax liability was apportioned on the basis of partnership percentages rather than stock ownership. See id. at 785-86. In this case, while the doctors at PMA referred to themselves at times as partners, they nevertheless clearly elected to function through

8

the corporate form, and they adhered to that choice virtually without exception. The corporation operated under articles of incorporation and bylaws; the corporation was capitalized through the issuance of stock, and the stock had real value; the corporation was operated by directors and officers, and the directors met regularly; the doctors' rights and obligations were defined by employment agreements with the corporation and stockholder agreements among themselves and the corporation; the corporation maintained corporate books, reporting its income on corporate tax forms; and the corporation filed annual corporate reports with the Commonwealth of Virginia. These circumstances do not manifest any intent to operate as a partnership, contrary to the situation in Boyd, Payne.

III

At bottom, Berman's claims are garden-variety contract claims for breach of an employment agreement and breach of a severance benefit agreement. He cannot, simply by calling his colleagues at PMA fiduciaries, convert these claims into anything more than what they are. His breach-of-contract claims were presented to the jury and fully resolved, and the jury's verdict has not been appealed.

Accordingly, we affirm the judgment of the district court.

AFFIRMED